UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

№ 05-CV-1717 (JFB) (ETB)
_____

Dean Nasca,

Plaintiff,

versus

The County of Suffolk, Police Officer Joseph Clements and John Does 1-10 said names being fictitious and intending to represent employees, agents and assigns of the County of Suffolk,

Defendants.
_____

MEMORANDUM and ORDER
January 2, 2008
_____

Joseph F. Bianco, District Judge:

Plaintiff Dean Nasca (hereinafter, "Nasca" or "plaintiff") brings this action against the County of Suffolk (hereinafter, "Suffolk"), and Police Officer Joseph Clements and John Does 1-10, who are alleged to be employees, agents and assigns of the County of Suffolk (hereinafter, the "defendants"), asserting violations of 42 U.S.C. §§ 1983, 1985, and 1986. Specifically, plaintiff alleges that Officer Clements violated his Fourth Amendment rights by entering the driveway of plaintiff's residence to issue a traffic summons to plaintiff for a traffic violation that the police officer observed prior to plaintiff is pulling his car into the driveway.

Defendants now move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons that follow, defendants' motion is granted in its entirety.

I. BACKGROUND

A. Facts

Upon consideration of a motion for summary judgment, the Court construes the facts in the light most favorable to plaintiff, the non-moving party.[1] *See Capobianco v. City of*

---

[1] Defendants submitted a statement, pursuant to Local Civil Rule 56.1, which asserts material facts that they claim are undisputed in this case. Defendants also complied with Local Civil Rule 56.2 by providing notice to plaintiff that he is not entitled simply to rely on allegations in his

complaint, but is required to submit evidence, including sworn affidavits, witness statements and documents to respond to the motion for summary judgment, pursuant to Fed. R. Civ. P. 56(e). (*See* Dkt. Entry # 46.) This action provided actual notice to plaintiff of the consequences of non-compliance with the requirements of Fed. R. Civ. P. 56. *See, e. g., Irby v. N.Y. Transit Auth.*, 262 F.3d 412, 414 (2d Cir. 2001) ("[W]e remind the district courts of this circuit, as well as summary judgment movants, of the necessity that *pro se* litigants have actual notice, provided in an accessible manner, of the consequences of the *pro se* litigant's failure to comply with the requirements of Rule 56. . . . [E]ither the district court or the moving party is to supply the *pro se* litigant with notice of the requirements of Rule 56. . . . In the absence of such notice or a clear understanding by the *pro se* litigant of the consequences of failing to comply with Rule 56, vacatur of the summary judgment is virtually automatic."). Although plaintiff did not respond to defendants' Rule 56.1 Statement in the precise form specified by the local rule, the Court overlooks this technical defect and reads plaintiff's responses liberally as he is *pro se*, and has fully considered the factual assertions made by plaintiff in his submissions to the Court as contesting defendants' statement of material undisputed facts, where his statements or evidence conflict. *See Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 63, 73 (2d Cir. 2001) ("A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules.") (citations omitted); *see, e.g., Gilani v. GNOC Corp.*, No. 04 Civ. 2935 (ILG), 2006 WL 1120602, at *2 (E.D.N.Y. April 26, 2006) (exercising court's discretion to overlook the parties' failure to submit statements pursuant to Local Civil Rule 56.1). Therefore, where the Court cites to defendants' Rule 56.1 Statement, plaintiff has not contested that fact in any of his papers and, to the extent possible, the Court also has provided a parallel cite to the paragraphs in plaintiff's affidavit or the page from plaintiff's deposition where he concedes such fact. As noted *infra,* plaintiff explicitly notes in his affidavit in opposition that the facts are undisputed except for *New York*, 422 F.3d 47, 50 (2d Cir. 2005).

On Sunday April 7, 2002, plaintiff was driving eastbound on Montauk Highway heading home to his residence at 89 Gillette Avenue in Bayport, New York. (Defs.' 56.1 ¶¶ 1-2; Nasca August 17, 2007 Affidavit (hereinafter, "Nasca Aff. I") ¶¶ 15, 21.) Police Officer Joseph Clements, an on-duty police officer in a marked unit, was traveling in the same direction heading eastbound on Montauk Highway. (Defs.' 56.1 ¶ 3; Nasca Aff. I ¶¶ 21-23.) According to Officer Clements, he observed the plaintiff passing him on his right while stopping at a red light at the intersection of Montauk Highway and Gillette Avenue, and crossing a solid white line into the shoulder area to make a right-hand turn at the intersection, in violation of Vehicle and Traffic Law §1122(a). (Defs.' 56.1 ¶¶ 4-8; Nasca Aff. I ¶¶ 71-74.)[2] Plaintiff then traveled south on Gillette Avenue and made a left-hand turn into his driveway at his residence. (Defs.' 56.1 ¶¶ 9-10; Nasca Aff. I ¶¶ 21-23.) Officer Clements followed the plaintiff into his driveway, got out of his vehicle and requested plaintiff's license, registration and insurance card. (Defs.' 56.1 ¶ 11; Nasca Aff. I ¶¶ 23-25.) Plaintiff initially refused to produce the requested documents

---

the dispute about whether the officer activated his emergency lights which, as explained *infra*, the Court does not find material to the legal analysis.

[2] Although plaintiff does not concede the traffic violation, he acknowledges that the officer testified to these observations and, as discussed *infra*, plaintiff was found guilty of the violation after a hearing before an Administrative Law Judge. In fact, in his deposition, plaintiff testified that, at the hearing, he "didn't address the issue of whether or not [he] made the right-hand turn" but rather focused on arguments related to the traffic code. (Nasca Dep. at 50.)

and Officer Clements informed plaintiff that he would be subject to arrest if he did not comply with the request. (Defs.' 56.1 ¶ 12; Nasca Aff. I ¶¶ 27-28.) Plaintiff then produced the requested documents and Officer Clements issued a summons for the violation of Vehicle and Traffic Law §1122(a). (Defs.' 56.1 ¶¶ 13-14; Nasca Aff. I ¶¶ 29-30.) Plaintiff also told Officer Clements, "I'll see you in court, pig." (Defs.' 56.1 ¶ 15; Nasca Dep. at 49.)

On July 18, 2002, a hearing was held before Administrative Law Judge Kravitz ("ALJ Kravitz") of the New York State Department of Motor Vehicles (DMV). (Defs.' 56.1 ¶ 16; Nasca Aff. I ¶ 31, and Ex. A (Transcript of July 18, 2002 DMV Hearing).) After Officer Clements and plaintiff testified, ALJ Kravitz found that Nasca had passed a vehicle on the right when he should have passed on the left in violation of VTL § 1122(a) and ordered plaintiff to pay $70 for the offense. (Defs.' 56.1 ¶ 17; Hearing Tr. at 8-9; Nasca Dep. at 48-50, 54.) In response to the fine, plaintiff asked ALJ Kravitz, "How much do you get of that?" (Defs.' 56.1 ¶ 19; Hearing Tr. at 9; Nasca Dep. at 54.)

Plaintiff appealed his conviction at DMV and his conviction was affirmed. (Defs.' 56.1 ¶ 21; Nasca Dep., at 58-59.) Plaintiff then appealed in Suffolk County Supreme Court, pursuant to an Article 78 proceeding and his conviction was again affirmed. (Defs.' 56.1 ¶ 22; Nasca Dep. at 59.) Thereafter, plaintiff filed a Notice of Appeal to the Second Department, but plaintiff never perfected the notice of appeal and abandoned his effort to overturn the conviction, which remains valid. (Defs.' 56.1 ¶¶ 23-24; Nasca Dep. at 59-61.)

B. Procedural History

Nasca commenced this action on April 5, 2005, alleging violations of his civil rights, pursuant to 42 U.S.C. § 1983. Plaintiff also alleged, pursuant to 42 U.S.C. §§ 1985 and 1986, that the County and other unnamed County defendants engaged in a conspiracy to violate plaintiff's rights. Specifically, Nasca asserted that, on or about April 7, 2002, Officer Clements unlawfully trespassed on his property to issue a summons and thereby violated his constitutional rights. (Compl. ¶¶ 17-24.) Nasca alleged that, as a result of these violations of his civil rights, he has suffered "humiliation, emotional distress, loss of property, loss of liberty and pecuniary and non-pecuniary damages." (Compl. ¶ 1.)

On May 18, 2007, defendants moved for summary judgment. On August 17, 2007, plaintiff filed his affidavit in opposition to the motion. On August 30, 2007, defendants filed a reply. On October 1, 2007, plaintiff filed a reply affidavit. On October 15, 2007, although it was clear from plaintiff's reply affidavit that he was aware of Local Rule 56.2, the Court directed that defendants provide plaintiff with the required notice under Local Rule 56.2 to advise *pro se* litigants on how to oppose a motion for summary judgment. The Court then provided plaintiff with another opportunity to supplement his submissions after receiving such notice. Thus, on November 5, 2007, plaintiff filed another affidavit in opposition to the motion.[3] The Court has fully considered all

---

[3] To the extent that plaintiff argues that defendants' motion should be denied because he did not receive the Local 56.2 Notice at the time of the initial filing of the motion, the Court denies plaintiff's application. As noted above, plaintiff was clearly aware of such Notice even before it was served on

3

of the parties' submissions.

## II. Discussion

### A. Summary Judgment Standard

The standards for summary judgment are well-settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may not grant a motion for summary judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Bronx Household of Faith v. Bd. of Educ. of City of N.Y.*, 492 F.3d 89, 96 (2d Cir. 2007). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *see Anderson*, 477 U.S. at 248 (holding summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party"); *Rivkin v. Century 21 Teran Realty LLC*, 494 F.3d 99, 103 (2d Cir. 2007). As such, "if 'there is any evidence in the record from any source from which a reasonable inference in the [nonmoving party's] favor may be drawn, the moving party simply cannot obtain a summary judgment.'" *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007) (quoting *R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 59 (2d Cir. 1997)) (alteration in original).

### B. Claims Arising Under 42 U.S.C. § 1983

Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 145 n.3 (1979). Section 1983 provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . .

42 U.S.C. § 1983. For claims under Section 1983, a plaintiff must prove that "(1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States." *Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999) (citation omitted).

---

him. In any event, in an abundance of caution, defendants (at the Court's request) subsequently served the Notice on plaintiff and plaintiff was given another opportunity to supplement his papers and he did so. Thus, the Court has considered all of plaintiff's submissions and plaintiff has suffered no prejudice from his failure to receive the Notice with the initial motion.

C. Malicious Prosecution

In the complaint, plaintiff alleges "intimidation in allegedly selectively enforcing the Vehicle and Traffic code of the State of New York as against the plaintiff." (Compl. ¶ 1.) Plaintiff further alleges that "[i]n an attempt to take the plaintiff's property, intimidate, coerce and otherwise violate the plaintiff's civil rights, the defendant, Joseph Clements, alleged violations for [sic] the New York State Vehicle and Traffic code, demanding fines and confiscation of the plaintiff's property without due process of law or compensation as provided for under the Constitution of the United States of America and in particular the Fifth and Fourteenth Amendments thereof." (Compl. ¶ 21.) Thus, it appeared from the face of the complaint that plaintiff was, in part, attempting to bring a malicious prosecution claim or other claims related to the issuance of the ticket and prosecution for the traffic violation.

Therefore, as an initial matter, defendants argued that plaintiff cannot seek to recover under Section 1983 in connection with his conviction for his violation of the Vehicle and Traffic Law, including by asserting a malicious prosecution claim, because that violation was affirmed on administrative appeal by the Department of Motor Vehicles, subsequently re-affirmed by the Suffolk County Supreme Court, and the plaintiff abandoned his initiated appeal to the Second Department. Thus, defendants argued that the valid state conviction could not be collaterally attacked in this Section 1983 action.

In response to this argument, plaintiff made clear that he is not seeking to base his Section 1983 claim in this lawsuit based on the summons itself:

> As will be more fully demonstrated herein, the adjudication of the summons issued to [plaintiff] does not bear on the fact that Clements trespassed and conducted an illegal search of my premises and violated my constitutional rights under 42 U.S.C. § 1983. The trespass and illegal search is a mutually exclusive event from the adjudication of the summons and [plaintiff] is not seeking to invalidate that decision pursuant to the 42 U.S.C. § 1983 claims.

(Nasca Affidavit I ¶¶ 5-6.) Similarly, in a letter to the Court dated March 7, 2007, plaintiff represented to the Court as follows: "Plaintiff has not alleged any cause of action for malicious prosecution." Plaintiff further explained in that letter: "As fully described in plaintiff's complaint, the § 1983 issue before the Court is not a traffic citation, but that 'CLEMENTS' violated my Fourth Amendment rights by conducting an illegal search of my home after threatening me with arrest if I did not produce my license, registration and insurance card. Although there is no dispute that I was found guilty of the traffic infraction, *res judicata* never attached to the illegal search and seizure, as plaintiff was denied the opportunity to ever raise that issue." (Plaintiff's Mar. 7, 2007 Letter, at 1.) Thus, it is abundantly clear that plaintiff is not pursuing a malicious prosecution claim or any claims that are based on any purported lack of evidentiary support for the issuance/prosecution of the traffic summons or the subsequent finding by the Administrative

5

Law Judge that he was guilty of the offense.[4]

Accordingly, the remaining claim in this case is a Fourth Amendment unreasonable search and seizure claim based upon the alleged trespass by defendant Clements onto plaintiff's private property without a warrant or consent – specifically, the entry by the officer onto the driveway of plaintiff's residence to issue a traffic summons and request his license, registration, and insurance card. It is to this issue that the Court will now turn.

D. Unreasonable Search and Seizure

To the extent that defendants argue that the proceedings in state court preclude Nasca from bringing an unreasonable search and search claim relating to the entry on his property to issue the traffic summons, the Court finds defendants' argument unpersuasive. Although ALJ Kravitz found Nasca guilty of passing a vehicle on the right when he should have done it on the left, the ALJ did not make any findings with regard to the lawfulness of any trespass and search on Nasca's property. (Hearing Tr. at 8-9.) Thus, that issue was never litigated as part of the administrative hearing, nor was it the subject of any findings by the ALJ. *See Wallace v. Roche,* 921 F. Supp. 946, 953 (E.D.N.Y. 1996) (holding that a state court determination of issues "actually litigated" in suppression hearing can bar subsequent Section 1983 claims). Thus, the determination by the ALJ that Nasca committed the traffic violation does not preclude Nasca from arguing in this lawsuit that Officer Clements's entry onto his property to issue the traffic summons was an unlawful trespass and search in violation of the Fourth Amendment.[5] *See, e.g., Davenport,* 2007 WL

---

[4] Even assuming *arguendo* that plaintiff was not abandoning any such claims regarding the lawfulness of the summons itself and/or the prosecution of the offense, such claims would fail as a matter of law based upon the adjudication of guilt that remains valid. In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that a Section 1983 action, seeking damages, is not cognizable if a decision in favor of the plaintiff would necessarily invalidate a criminal conviction, unless the conviction or sentence had been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." 512 U.S. at 486-87; *see also Hygh v. Jacobs*, 961 F.2d 359, 367 (2d Cir. 1992) ("A plaintiff alleging the constitutional tort of malicious prosecution in a action pursuant to § 1983 must establish termination of the prosecution in his favor in accordance with applicable state law."). An adjudication by an Administrative Law Judge has the same preclusive effect on a false arrest or malicious prosecution claim. *See, e.g., Zanghi v. Inc. Vill. of Old Brookville*, 752 F.2d 42, 46 (2d Cir. 1985) (granting summary judgment on false arrest claim where ALJ made probable cause finding as to charge of driving while intoxicated); *Davenport v. County of Suffolk,* No. 99-CV-3088, 2007 WL 608125, at *5-8 (E.D.N.Y. Feb. 23, 2007) (holding that ALJ finding of probable cause on the charge of driving under the influence of drugs is an absolute bar to any false arrest or malicious prosecution based on that claim). In the instant case, since plaintiff's guilt of the traffic offense has not been invalidated, any malicious prosecution, false arrest or other claim challenging the lawfulness of that summons and adjudication must fail as a matter of law.

[5] To the extent defendants suggest that plaintiff must exhaust state administrative remedies on this separate issue regarding the officer's entry onto his driveway before filing his Section 1983 action, the Court disagrees. *See Patsy v. Bd. of Regents,* 457 U.S. 496 (1982) ("[E]xhaustion of state

608125, at *6 (holding that ALJ finding did not address separate search and seizure issue and, thus, Section 1983 claim on that issue was not precluded.)

Nonetheless, plaintiff's claim under Section 1983 fails because the conduct complained of did not "deprive[] the plaintiff of a right guaranteed under the Constitution of the United States." *Snider*, 188 F.3d at 53 (citation omitted). In particular, defendants argue that the pursuit and entry onto plaintiff's driveway was privileged because there was probable cause to issue the summons. (Defendants' Brief, dated Aug. 29, 2007, at 1.) Although the Court agrees that the ALJ has already found that the officer had probable cause for the issuance of summons and the Court also agrees with the defendants' conclusion that the Section 1983 claim cannot survive summary judgment, the analysis of the lawfulness of the entry onto the driveway does not hinge on the existence of probable cause. Instead, as discussed in detail below, the Court concludes that plaintiff's unreasonable search and seizure claim must fail as a matter of law based on the undisputed facts because it is well settled under Supreme Court and Second Circuit precedent that the officer's entry onto the driveway for a police purpose (such as the issuance of a summons) does not implicate any Fourth Amendment rights of the plaintiff.

"The touchstone of Fourth Amendment analysis is whether a person has a 'constitutionally protected reasonable expectation of privacy.'" *California v. Ciraolo,* 476 U.S. 207, 211 (1986) (quoting *Katz v. United States,* 389 U.S. 347, 360 (1967) (Harlan, J., concurring). It is well-settled that, although the Fourth Amendment protects the home and its curtilage, such protection does not extend to the home's "open fields" because those areas "do not provide the setting for those intimate activities that the [Fourth] Amendment is intended to shelter from government interference or surveillance." *United States v. Oliver,* 466 U.S. 170, 179 (1984). Thus, "the government's intrusion upon the open fields is not one of those 'unreasonable searches' proscribed by the text of the Fourth Amendment." *Id.* at 177; *see also Hester v. United States,* 265 U.S. 57, 59 (1924) ("[T]he special protection accorded by the Fourth Amendment to the people in their 'persons, houses, papers, and effects,' is not extended to the open fields. The distinction between the latter and the house is as old as the common law."). Moreover, in such situations, the fact that police officers trespassed onto the "open fields" has no constitutional significance:

> The law of trespass . . . forbids intrusions upon land that the Fourth Amendment would not proscribe. For trespass law extends to instances where the exercise of the right to exclude vindicates no legitimate expectation interest. Thus, in the case of open fields, the general rights of property protected by the common law of trespass have little or no relevance to the applicability of the Fourth Amendment.

*Oliver,* 466 U.S. at 183-84 (footnotes omitted). The reason for the "open fields" doctrine is very clear – "what a person exposes to the public . . . is not a subject of Fourth

---

administrative remedies should not be required as a prerequisite to bringing an action pursuant to § 1983."); *accord Wilbur v. Harris,* 53 F.3d 542, 544-45 (2d Cir. 1995).

Amendment protection." *Katz,* 389 U.S. at 347.

Applying this precedent, the Second Circuit has noted that "[t]he route which any visitor to a residence would use is not private in the Fourth Amendment sense." *United States v. Reyes,* 283 F.3d 446, 465 (2d Cir. 2002) (quoting Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 2.3(e), at 499 (3d ed. 1996) (footnotes omitted)). Thus, the Second Circuit has repeatedly held that no Fourth Amendment search occurs when a law enforcement officer enters a home's driveway, walkway, or similar area that is accessible to the general public. *See, e.g., Reyes,* 283 F.3d at 465 ("[W]e have found no Fourth Amendment violation based on a law enforcement officer's presence on an individual's driveway when that officer was in pursuit of legitimate law enforcement business") (citing *Krause v. Penny,* 837 F.2d 595, 597 (2d Cir. 1988)); *see also United States v. Titemore*, 437 F.3d 251, 259-60 (2d Cir. 2006) (holding defendant did not have reasonable expectation of privacy in the porch and track of law that trooper used to reach stairway); *see also Serby v. Town of Hempstead,* No. 04-CV-901 (DRH) (MLO), 2006 WL 2853869, at *8 (E.D.N.Y. Sept. 30, 2006) ("Plaintiff cannot claim a reasonable expectation of privacy on the walkway or driveway that leads to his door or the unlocked screen door before the inner door to his house.")

Other circuits have reached the same conclusion and have held that driveways accessible to the public do not implicate a homeowner's Fourth Amendment rights. *See, e .g., Johnson v. Weaver,* No. 06-4470, 2007 WL 2780914, at *2 (6th Cir. Sept. 24, 2007) (unpublished opinion) ("Because the driveway constitutes an 'open field,' [plaintiff] holds no reasonable privacy expectation in it, and his efforts to shield that area from any manner of unwelcome guest prove inconsequential."); *United States v. Evans,* 27 F.3d 1219, 1228 (7th Cir. 1994) (holding that "[t]he agents' approach to garage did not implicate a Fourth Amendment interest because Evans did not present any evidence at the suppression hearing that he had a reasonable expectation of privacy in the driveway."); *United States v. Reed,* 733 F.2d 492, 501 (8th Cir. 1984) ("[N]o Fourth Amendment search occurs when police officers who enter private property restrict their movements to those areas generally made accessible to visitors – such as driveways, walkways, or similar passageways."); *see also Reyes*, 283 F.2d at 465 ("Several other circuits have reached similar conclusions regarding the accessible, semi-private nature of driveways and the propriety of law enforcement officers entering such driveways in the course of conducting legitimate law enforcement activities.") (collecting cases).

In the instant case, plaintiff's Fourth Amendment claim under Section 1983 is predicated on the entry of Officer Clements onto plaintiff's driveway, as plaintiff was pulling into the driveway in his car from a public street, to issue a summons for a traffic violation by plaintiff that the officer testified he observed moments earlier (and to ask for plaintiff's license, registration, and insurance card).[6] However, Officer Clements's entry

---

[6] It is undisputed that, in issuing the ticket, Officer Clements only entered onto plaintiff's driveway and proceeded no further on plaintiff's property. Therefore, although plaintiff repeatedly refers to the unlawful search of his residence in his opposition papers, it appears that plaintiff is simply referring to his driveway as part of his residence

8

onto the driveway for that purpose does not implicate the Fourth Amendment. Therefore, summary judgment on the Section 1983 claim must be granted in defendants' favor. *See, e.g., Johnson,* 2007 WL 2780914, at *2 (affirming summary judgment for defendant officers where plaintiff brought Section 1983 claim based upon alleged Fourth Amendment violation when officers trespassed by proceeding up his driveway in defiance of his order to stay out); *Knott v. Sullivan,* 418 F.3d 561, 573-74 (6th Cir. 2005) (affirming summary judgment in favor of defendant officers in Section 1983 lawsuit and holding that defendants' warrantless entry onto homeowner's driveway did not violate homeowner's Fourth Amendment rights); *Rogers v. Vicuna,* 264 F.3d 1, 6 (1st Cir. 2001) (affirming dismissal of Section 1983 claim relating to seizure of plaintiff's vehicles from driveway and holding that plaintiff did not have reasonable expectation of privacy in driveway); *Beganskas v. Town of Babylon,* Nos. 03-CV-287 (DLI) (JO), 04-CV-5693 (DLI) (JO), 2006 WL 2689611, at *2 (E.D.N.Y. Sept. 16, 2006) (granting summary judgment for defendants on Fourth Amendment claim under Section 1983 and finding that there was no Fourth Amendment search where County employee walked, among other places, up driveway to front door to enforce provisions of Town Code).

---

because there is no evidence, or even an allegation, that Office Clements went onto any areas of plaintiff's property other than the driveway, or that he searched defendant's person, car, or home. Moreover, as to the driveway, plaintiff concedes in his affidavit that his driveway is accessible by the public from Gillette Avenue and that the officer's issuance of the summons took place about 200 feet from the entrance to his driveway in front of his garage. (Nasca Aff. I ¶¶ 23, 67.)

Plaintiff makes a number of arguments in an attempt to avoid summary judgment. First, plaintiff contends that "Clements had no probable cause to believe that I had violated a traffic statute" and, thus, concludes that Officer Clements's entry onto his driveway to issue the summons was a violation of plaintiff's Fourth Amendment rights. (Nasca Aff. I ¶ 75.) Second, plaintiff argues that there is an issue of fact over whether Officer Clements activated his emergency lights and whether he tried to initiate the traffic stop prior to plaintiff turning his car into his driveway. (*Id.* ¶¶ 34-40.) Thus, plaintiff contends that "[t]he conflicting and contradictory testimony of Police Officer Clements offers a triable issue of fact that he failed to intitate a traffic stop on a public roadway" and that the entry onto the driveway of plaintiff's residence violated the Fourth Amendment. (*Id.* ¶ 84.) Third, plaintiff contends that, even if a traffic violation occurred, Officer Clements did not have the authority to enter plaintiff's driveway, without consent, to issue a ticket absent exigent circumstances. (*Id.* ¶¶ 46-48.)

The Court has carefully examined all of plaintiff's arguments in his submissions (including, but not limited to, the above-referenced principal arguments) and finds them unavailing. As a threshold matter, to the extent that plaintiff is suggesting there was no probable cause for the traffic violation, an administrative law judge has already determined that probable cause existed for the issuance of the traffic summons and plaintiff cannot re-litigate that issue here in this lawsuit. More importantly, even if there were no probable cause for the summons, the officer's entry into the driveway would not provide any basis for a Fourth Amendment violation. It is well settled that an officer does not need probable cause, or even reasonable suspicion,

9

to enter a person's driveway in connection with the performance of his duties because, under the open fields doctrine, such entry does not trigger Fourth Amendment protection. *See, e.g., United States v. Pinter,* 984 F.2d 376, 379 (10th Cir. 1993) ("The open fields doctrine does not require that law enforcement officials have some objective reason – either probable cause or reasonable suspicion – before entering an open field."). Plaintiff's other arguments suffer from a similar defect. Specifically, the purported dispute regarding whether the policeman used the emergency lights or whether he could have conducted the traffic stop prior to entering the driveway are immaterial for Fourth Amendment purposes. In other words, Officer Clements does not need an exigency to enter the driveway; he is free to enter the driveway for police purposes without any additional showing or justification because such entry does not implicate the Fourth Amendment. Finally, although plaintiff claims that there is no authority for a police officer to enter a driveway to issue a summons, that contention is contradicted by the above-referenced case authority which permits such an entry for any police purpose. For example, in *Ippolito v. Meisel,* 958 F. Supp. 155, 162 (S.D.N.Y. 1997), the court granted summary judgment for the defendant officers in Section 1983 action where officer entered driveway (after motorist pulled into driveway), ordered production of license and registration, and issued two traffic tickets for violations that had just occurred. In reaching that decision, the court held that "[the Officer's] entry onto property, for purpose of fulfilling his public duty (issuing traffic citations to a motorist he personally saw violate a traffic law) is privileged." *Id.* at 162 (citations omitted). This Court similarly concludes that Officer Clements could enter the driveway for any police purpose, including to issue a summons, without implicating the Fourth Amendment by such entry.[7]

In sum, based upon the undisputed facts regarding the issuance of the summons, it is clear that, as a matter of law, plaintiff cannot demonstrate that Officer Clements's entry onto his driveway to issue the summons violated the Fourth Amendment because plaintiff had no reasonable expectation of privacy in his driveway. Accordingly, summary judgment in defendants' favor on the Section 1983 claim is warranted.[8]

---

[7] To the extent that Plaintiff is also separately challenging the officer's authority to require him to produce his license, registration, and insurance card, it is beyond cavil that a police officer has the authority to request such information during a stop for a traffic violation. *See, e.g., Ippolito,* 958 F. Supp. at 162 n.6 ("[T]here is no question that stopping a suspected violator of the traffic laws to request identification is within a police officer's duty") (citations omitted). Here, the ALJ has already determined that plaintiff was guilty of the traffic offense. Thus, given the traffic offense, Officer Clements was clearly authorized to require plaintiff to provide that documentation and there was no Fourth Amendment violation by that action.

[8] Plaintiff's conspiracy claim under 42 U.S.C. § 1985 must also fail because there is no underlying Section 1983 violation. The elements of a Section 1985 claim for deprivation of a civil right are: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, . . .; (3) an act in furtherance of the conspiracy; (4) whereby a person is ... deprived of any right of a citizen of the United States." *Brown v. City of Oneonta*, 221 F.3d 329, 341(2d Cir. 2000) (quoting *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993)). Because the Court has found no constitutional violation exists, dismissal

## III. CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is GRANTED in its entirety. The Clerk of the Court is directed to enter judgment accordingly and to close this case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: January 2, 2008
Central Islip, NY

\*\*\*

Plaintiff appears *pro se.* The attorney for defendant is Christine Malafi, Suffolk County Attorney, H. Lee Dennison Building, 100 Veterans Memorial Highway, P.O. Box 6100, Hauppauge, New York, 11788.

---

of the Section 1985 claim is warranted. *See, e.g., Simpson v. Town of Southampton*, No. 06-CV-6743 (JFB) (WDW), 2007 U.S. Dist. LEXIS 43649, at \*19 (E.D.N.Y. June 15, 2007) (citing *O'Bradovich v. Vill. of Tuckahoe*, 325 F. Supp. 2d 413, 426 (S.D.N.Y. 2004)); *Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 527 (2d Cir. 1996) ("The complaint failed to state a claim under § 1985(3) because, inter alia, that section creates no substantive rights but merely 'provides a remedy for violation of the rights it designates.'") (quoting *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 372 (1979))). Moreover, because no actionable conspiracy exists, plaintiff's claim under 42 U.S.C. § 1986 must also be dismissed. *See Dwares v. New York*, 985 F.2d 94, 101 (2d Cir. 1993) ("Liability under § 1986 . . . . is dependent on the validity of a claim under § 1985.") (citing *Dacey v. Dorsey*, 568 F.2d 275, 277 (2d Cir. 1978)). Finally, to the extent plaintiff is attempting to assert a *Monell* claim against Suffolk County or other unnamed defendants, that claim must fail because, given that there was no constitutional violation by Officer Clements, no *Monell* claim can exist under Section 1983. *See, e.g., Pierre v. City of New York,* No. 05-CV-5018 (JFB) (KAM), 2007 WL 2403573, at \*15 (E.D.N.Y. Aug. 17, 2007).